## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

### Holding a Criminal Term
### Grand Jury Sworn in on November 3, 2016

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Crim. No.** |
| | : | |
| | : | **Grand Jury Original** |
| **v.** | : | |
| | : | **CHARGES:** |
| **JOHN A. FAULKNER, JR., and** | : | |
| | : | **18 U.S.C. § 371 (Conspiracy);** |
| **ISAIAH JOHNSON, a/k/a** | : | **18 U.S.C. § 1341 (Mail Fraud);** |
| **"Zeke,"** | : | **18 U.S.C. § 1343 (Wire Fraud);** |
| **"Fella,"** | : | **18 U.S.C. § 1028A (Aggravated Identity** |
| **"Big Fella,"** | : | **Theft);** |
| | : | **18 U.S.C. § 208 (Acts Affecting a Personal** |
| **Defendants.** | : | **Financial Interest);** |
| | : | **18 U.S.C. § 1957 (Engaging in Monetary** |
| | : | **Transactions in Property Derived from** |
| | : | **Specified Unlawful Activity);** |
| | : | **18 U.S.C. § 2 (Aiding and Abetting;** |
| | : | **Causing an Act to be Done); and** |
| | : | **22 D.C. Code §§ 3221(a) and 3222(a)** |
| | : | **(Fraud in the First Degree).** |
| | : | |
| | : | **FORFEITURE ALLEGATION:** |
| | : | |
| | : | **18 U.S.C. § 981(a)(1)(C), 18 U.S.C. §** |
| | : | **982(a)(1), 28 U.S.C. § 2461(c)** |
| | : | **(Criminal Forfeiture).** |

### INDICTMENT

The Grand Jury charges that:

### Introduction

At all times relevant to this Indictment:

1.     Defendant JOHN A. FAULKNER, JR. was the owner and operator of Company A, a limited liability company incorporated in the state of Maryland.

2.     Defendant ISAIAH JOHNSON, also known as "Zeke," "Fella," and "Big Fella," was a Compliance Case Manager ("CCM") and later a Resolution and Compliance Manager with the District of Columbia Public Schools ("DCPS").

3.     DCPS is a component of the District of Columbia government and its offices are located in the District of Columbia. The Office of Special Education ("OSE") operated within DCPS. The goal of OSE was to provide high-quality inclusion and special education services as well as to improve academic outcomes for students with disabilities.

4.     Among other things, the OSE managed and oversaw the DCPS Compensatory Education ("Comp. Ed.") Program. The Comp. Ed. Program awarded services to eligible students to assist with their educational needs and development. Students awarded Comp. Ed. services had learning, mental, and/or behavioral disabilities that created an educational barrier that prevented the student from reaping the full benefit of his/her education. Comp. Ed. services consisted of tutoring, individualized education, mentoring, speech therapy, occupational therapy, and behavioral and psychological analysis. Once DCPS deemed it appropriate for a student to receive Comp. Ed. services, it sent a notification letter to the student's parent or guardian specifying the Comp. Ed. services awarded to their child ("Comp. Ed. Letter"). The parent or guardian was responsible for identifying an independent provider to perform the services described in the Comp. Ed. Letter. The OSE provided a list of vendors. The services were typically performed outside of school, and after school hours.

5.     CCMs were responsible for ensuring that parents of DCPS students entitled to Comp. Ed. services were aware of their award and how to obtain the services of independent

2

providers for their children.  As part of these responsibilities, CCMs prepared, signed, and issued Comp. Ed. Letters.

6.     In order to obtain payment, a service provider was required to submit two documents to the District of Columbia government: (1) a timesheet reflecting the name of the child for whom services were performed, the name of the tutor/mentor who performed the services, the number of hours worked, the signature of the parent/guardian, and the signature of the tutor; and (2) an invoice reflecting the total amount due from one or more timesheets for which the service provider sought payment.  In addition, a copy of the Comp. Ed. Letter for the student receiving services was required to be included along with one of a vendor's initial invoices for services provided to that student.  DCPS paid service providers up to $65 per hour for tutoring, $99.50 per hour for counseling and mentoring, and $100.90 per hour for speech and language services.

7.     On or about September 20, 2011, Company A became eligible to be paid as a vendor for the District of Columbia government.

8.     Bank of America, Wells Fargo, BB&T, and Security Plus Federal Credit Union were financial institutions that conducted business in the United States.  Defendant FAULKNER opened and maintained accounts for Company A at Bank of America and Wells Fargo.  Defendant JOHNSON opened and maintained personal accounts at BB&T and Security Plus Federal Credit Union.

**The Scheme to Defraud**

9.     Beginning at least as early as July 2012, through at least July 2014, in the District of Columbia and elsewhere, Defendants FAULKNER and JOHNSON, knowingly devised a scheme to defraud the District of Columbia, and to obtain money and property of the District of Columbia by means of materially false and fraudulent pretenses, representations, and promises.

3

## Purpose of the Scheme to Defraud

10.     It was the purpose of the scheme to defraud that Defendants FAULKNER and JOHNSON provided false or fictitious timesheets, invoices, and other documents to DCPS for work purportedly performed by Company A, Defendant FAULKNER, or others in order to obtain money by fraud for Defendant FAULKNER and Defendant JOHNSON's personal benefit and use.

## Manner and Means

11.     Defendants FAULKNER and JOHNSON accomplished the purpose of the fraud scheme by using the following manner and means, among others:

a.  It was a part of the scheme to defraud that Defendant JOHNSON and others provided Defendant FAULKNER with the names of DCPS students, some of whom had been awarded Comp. Ed. services by DCPS.

b.  It was a further part of the scheme to defraud that Defendant JOHNSON and others provided Defendant FAULKNER with what purported to be Comp. Ed. Letters awarding services to particular DCPS students.

c.  It was a further part of the scheme to defraud that Defendants FAULKNER and JOHNSON created or caused to be created false and fraudulent timesheets purporting to reflect Comp. Ed. services provided to DCPS students that, in fact, had not been performed.  These timesheets included Company A's name, Company A's address, an email address, the name of the child for whom services were purportedly performed, the name of the individual who purportedly performed the services, the dates and number of hours of the purported services, what purported to be the signature of the parent or guardian whose child had received the services, and what purported to be the signature of the person who purportedly performed the services.  Defendant FAULKNER was listed as the "supervisor" on these timesheets.

4

d.   It was a further part of the scheme to defraud that Defendant FAULKNER attached these timesheets to invoices to DCPS on Company A letterhead reflecting the total amount owed to Company A for the Comp. Ed. services purportedly performed for the DCPS students identified in the attached timesheets when, in fact, these services had not been performed.

e.   It was a further part of the scheme to defraud that Defendants FAULKNER and JOHNSON delivered or caused to be delivered these invoices and timesheets to the DCPS offices in the District of Columbia.

f.   It was a further part of the scheme to defraud that Defendant FAULKNER provided DCPS with an address in Maryland for Company A.  The District of Columbia mailed checks to Company A at this address in payment of the invoices Defendants FAULKNER and JOHNSON submitted.

g.   It was a further part of the scheme to defraud that Defendant FAULKNER deposited or caused to be deposited the District of Columbia checks to Company A into Company A's account at Bank of America and Wells Fargo.  Defendant FAULKNER distributed a portion of these proceeds to Defendant JOHNSON.

## COUNT ONE
### (Conspiracy)

### The Conspiracy

12.   The allegations set forth in paragraphs 1 through 11 of this Indictment are re-alleged and incorporated by reference herein.

13.   From at least in or around July 2012 through at least in or around July 2014 Defendants FAULKNER and JOHNSON did unlawfully, willfully, and knowingly combine, conspire, and confederate, and agree with others, both known and unknown to the Grand Jury, to commit offenses against the United States, namely:

5

a. Wire fraud, accomplished by knowingly devising and participating in a scheme to defraud the District of Columbia and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and to transmit and cause to be transmitted by wire in interstate commerce some communication for the purpose of executing the scheme to defraud, in violation of Title 18, United States Code, Section 1343;

b. Mail fraud, accomplished by knowingly devising and participating in a scheme to defraud the District of Columbia and obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, cause to be delivered by the United States Postal Service some mail matter for the purpose of executing the scheme to defraud, in violation of Title 18, United States Code, Section 1341;

c. Aggravated Identity Theft, accomplished by knowingly transferring, possessing, and using, without lawful authority, a means of identification of an actual person during and in relation to violations of Title 18, United States Code, Sections 1341 (mail fraud) and 1343 (wire fraud), in violation of Title 18, United States Code, Section 1028A.

## Object and Goal of the Conspiracy

14.     It was an object and goal of the conspiracy for Defendants FAULKNER and JOHNSON, and others, to unlawfully enrich themselves and others and to fraudulently obtain money from the District of Columbia.

## Manner and Means of the Conspiracy

15.     Among the manners and means by which Defendants FAULKNER, JOHNSON, their co-conspirators, and others would and did carry out the objectives of the conspiracy were the following:

a.     They would and did create timesheets reflecting services purportedly performed for DCPS students which had, in fact, not been performed. These documents included the names and, in some instances, the signatures of (a) individuals who purportedly provided services to the identified DCPS students, (b) DCPS students, and (c) the students' parents or guardians. Defendants FAULKNER, JOHNSON, and their co-conspirators would and did use these means of identification without the knowledge or permission of the individuals.

b.     They would and did attach these timesheets to Company A invoices and submitted them to DCPS.

c.     They would and did directly and indirectly cause the District of Columbia to make payments to Company A for services that were never performed.

## Overt Acts

16.     In furtherance of the conspiracy and to effect the illegal objects thereof, Defendants FAULKNER and JOHNSON and their co-conspirators committed and caused to be committed the following overt acts, among others, in the District of Columbia and elsewhere:

a.     On or about December 12, 2011, Defendant JOHNSON sent an email to numerous individuals soliciting tutors and mentors for Defendant FAULKNER. Defendant JOHNSON signed the email, "Zeke."

b.     On May 4, 2012, Defendant JOHNSON sent an email to Defendant FAULKNER attaching multiple Individualized Education Plans and a Vocational Assessment for DCPS

7

students.  Company A later submitted invoices to the District of Columbia government reflecting services purportedly performed for at least one of the students identified in these documents that were, in fact, not performed.  The District of Columbia paid Company A for services billed in the invoices.

c.  From at least July 2012 through at least August 2013, Defendant JOHNSON and others provided Defendant FAULKNER with documents purporting to be Comp. Ed. Letters for DCPS students, some of whom had been awarded Comp. Ed. services.

d.  From at least July 2012 through at least May 2014, Defendants FAULKNER and JOHNSON did directly and indirectly cause Company A invoices to be submitted to the District of Columbia government for services Company A did not perform.

e.  From at least July 2012 through at least July 2014, Defendant FAULKNER deposited or cashed checks from the District of Columbia to Company A in payment, at least in part, for services Company A did not perform.

f.  On or about July 4, 2012, Defendant JOHNSON sent an email to Defendant FAULKNER with the subject "Plan" and the text "Submit" in the body of the email and attaching an unsigned Comp. Ed. Letter for a DCPS student.  Company A later submitted invoices to the District of Columbia government reflecting services purportedly performed for at least one of the students identified in these documents that were, in fact, not performed.  The District of Columbia paid Company A for services billed in the invoices.

g.  On or about August 27, 2012, Defendant JOHNSON sent an email to numerous individuals soliciting tutors for Defendant FAULKNER.

h.  On or about October 14, 2012, Defendant JOHNSON sent an email to Defendant FAULKNER attaching an unsigned Comp. Ed. Letter for a DCPS student.  Company A later

8

submitted invoices to the District of Columbia government reflecting services purportedly performed for this student that were, in fact, not performed. The District of Columbia paid Company A for services billed in the invoices.

i.   On or about December 8, 2012, Defendant JOHNSON sent an email to himself attaching unsigned Comp. Ed. Letters for six DCPS students on which Defendant JOHNSON was listed as the author.

j.   On or about December 15, 2012, Defendant JOHNSON forwarded the Comp. Ed Letters referenced in paragraph 16(i) to Defendant FAULKNER. Company A later submitted invoices to the District of Columbia government reflecting services purportedly performed for at least one of the students identified in these Comp. Ed. Letters that were, in fact, not performed. The District of Columbia paid Company A for services billed in the invoices.

k.   On or about January 14, 2013, Defendant FAULKNER sent an email to Defendant JOHNSON attaching a Company A invoice reflecting services performed for a DCPS student that were, in fact, never performed. The invoice was submitted to the District of Columbia government the next day and the District of Columbia subsequently paid Company A for the services billed in the invoice.

l.   On or about January 30, 2013, an email was sent from a DCPS scanner to Defendant JOHNSON attaching a Comp. Ed. Letter signed by Defendant JOHNSON for a DCPS student.

m.   On or about February 6, 2013, an email was sent from a DCPS scanner to Defendant JOHNSON attaching Comp. Ed. Letters signed by Defendant JOHNSON for three DCPS students. Company A later submitted an invoice to the District of Columbia government reflecting services purportedly performed for at least one of the students identified in these Comp. Ed. Letters that

were, in fact, not performed.  The District of Columbia paid Company A for the services billed in the invoice.

n.  On or about February 11, 2013, an email was sent from a DCPS scanner to Defendant JOHNSON attaching Comp. Ed. Letters for five DCPS students.  Company A later submitted invoices to the District of Columbia government reflecting services purportedly performed for at least one of the students identified in these Comp. Ed. Letters that were, in fact, not performed.  The District of Columbia paid Company A for the services billed in the invoices.

o.  On or about March 14, 2013, an email was sent from a DCPS scanner to Defendant JOHNSON attaching a stamped copy of the invoice referenced in paragraph 16(k) that had been submitted to the District of Columbia government on or about January 15, 2013.  Later that day, Defendant JOHNSON forwarded this email to Defendant FAULKNER.

p.  On or about May 28, 2013, an email was sent from a DCPS scanner to Defendant FAULKNER with the same Comp. Ed. Letter as referenced in paragraph 16(l).  Company A later submitted invoices to the District of Columbia government reflecting services purportedly performed for the student identified in this Comp. Ed. Letter that were, in fact, not performed.  The District of Columbia paid Company A for the services billed in the invoices.

q.  On or about July 3, 2013, Defendant FAULKNER sent Defendant JOHNSON an email attaching a spreadsheet reflecting financial details for four Company A invoices to the District of Columbia government.  This spreadsheet reflected the amount received by Company A, the individual listed in the invoice as having provided services, the amount paid to these individuals as "0," the number of hours billed for Company A revenue before and after taxes, and the even split between Defendant FAULKNER and Defendant JOHNSON (who is referred to in

10

the spreadsheet as "Fella") of the Company A revenue after taxes. The invoices listed in the spreadsheet were, at least in part, for services Company A never performed.

        r.  On or about July 3, 2013, Defendant FAULKNER withdrew $20,000 in cash from Company A's account at Bank of America.

        s.  On or about July 5, 2013, a deposit of $7,000 was made into Defendant JOHNSON's account at BB&T. On the same day, Defendant JOHNSON made cash deposits of $5,000 and $3,000 into two separate accounts of his at Security Plus Federal Credit Union.

        t.  On or about August 23, 2013, Defendant JOHNSON sent an email to Defendant FAULKNER containing the link to an online listing for office space for rent. Company A subsequently rented this office space.

        u.  In response to these and other invoices, as well as other falsified or fraudulent documents, the District of Columbia sent at least $217,366.25 in payments to Company A for services that were never performed.

**(Conspiracy to Commit Mail Fraud, Wire Fraud, and Aggravated Identity Theft, in violation of Title 18, United States Code, Section 371)**

## COUNTS TWO THROUGH TEN
### (Mail Fraud)

    17.    Paragraphs 1 through 11 and 14 through 16 of this Indictment are realleged and incorporated by reference as if set out in full.

    18.    On or about each of the dates specified below, in the District of Columbia and elsewhere, Defendants FAULKNER and JOHNSON, having devised and intended to devise a scheme to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did knowingly cause to be delivered by the United States Postal Service from the Government of the District of Columbia in the District of

11

Columbia to an address for Company A in Maryland, the mail matter described in each count

below, each mailing constituting a separate count:

| COUNT | ON OR ABOUT DATE | MAILING |
|---|---|---|
| **TWO** | September 14, 2012 | Check #5483609 from the District of Columbia issued to Company A in payment of Company A invoices which included services not performed and which was deposited into Company A's Bank of America account. |
| **THREE** | November 6, 2012 | Check #5505185 from the District of Columbia issued to Company A in payment of Company A invoices which included services not performed and which was deposited into Company A's Bank of America account. |
| **FOUR** | December 13, 2012 | Check #5519991 from the District of Columbia issued to Company A in payment of Company A invoices which included services not performed and which was deposited into Company A's Bank of America account. |
| **FIVE** | February 8, 2013 | Check #5546451 from the District of Columbia issued to Company A in payment of Company A invoices which included services not performed and which was deposited into Company A's Bank of America account. |
| **SIX** | June 12, 2013 | Check #5598359 from the District of Columbia issued to Company A in payment of Company A invoices which included services not performed and which was deposited into Company A's Bank of America account. |

| **SEVEN** | June 25, 2013 | Check #5602658 from the District of Columbia issued to Company A in payment of Company A invoices which included services not performed and which was deposited into Company A's Bank of America account. |
| **EIGHT** | December 30, 2013 | Check #5672601 from the District of Columbia issued to Company A in payment of Company A invoices which included services not performed and which was deposited into Company A's Bank of America account. |
| **NINE** | January 1, 2014 | Check #5673405 from the District of Columbia issued to Company A in payment of a Company A invoice which included services not performed and which was deposited into Company A's Wells Fargo account. |
| **TEN** | July 11, 2014 | Check #5747352 from the District of Columbia issued to Company A in payment of a Company A invoice which included services not performed and which was deposited into Company A's Bank of America account. |

**(Mail Fraud, in violation of Title 18, United States Code, Section 1341)**

## COUNTS ELEVEN THROUGH FIFTEEN
**(Wire Fraud)**

19.     Paragraphs 1 through 11 and 14 through 16 of this Indictment are realleged and incorporated by reference as if set out in full.

20.     On or about each of the dates specified below, in the District of Columbia and elsewhere, for the purpose of executing the aforementioned scheme to defraud and attempting to do so, Defendants FAULKNER and JOHNSON, having devised and intended to devise a scheme to defraud, and for obtaining money and property by means of materially false and fraudulent

pretenses, representations, and promises, did knowingly transmit and cause to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme to defraud, as described in each count below, each transmission constituting a separate count:

| COUNT | ON OR ABOUT DATE | WIRE TRANSMISSION |
|---|---|---|
| **ELEVEN** | January 30, 2013 | Email from a DCPS scanner to Defendant JOHNSON attaching a Comp. Ed. Letter for a DCPS student signed by Defendant JOHNSON. |
| **TWELVE** | February 6, 2013 | Email from a DCPS scanner to Defendant JOHNSON attaching Comp. Ed. Letters for three DCPS students signed by Defendant JOHNSON. |
| **THIRTEEN** | February 11, 2013 | Email from a DCPS scanner to Defendant JOHNSON attaching unsigned Comp. Ed. Letters for five DCPS students. |
| **FOURTEEN** | May 28, 2013 | Email from a DCPS scanner to Defendant FAULKNER attaching a Comp. Ed. Letter for a DCPS student signed by Defendant JOHNSON. |
| **FIFTEEN** | January 15, 2014 | Email from Defendant FAULKNER to dcps.invoices@dc.gov attaching Company A invoices, including at least one for services that were never performed. |

**(Wire Fraud, in violation of Title 18, United States Code, Section 1343)**

## COUNTS SIXTEEN THROUGH TWENTY-TWO
### (Aggravated Identity Theft)

21.     Paragraphs 1 through 11 and 14 through 16 of this Indictment are realleged and incorporated by reference as if set out in full.

22.     On or about each of the dates specified below, in the District of Columbia and elsewhere, Defendants FAULKNER and JOHNSON aided and abetted and caused others known and unknown, to knowingly transfer, possess, and use, without lawful authority, a means of identification of an actual person, as described below for each count, during and in relation to violations of Title 18, United States Code, Sections 1341 (mail fraud) and 1343 (wire fraud):

| COUNT | ON OR ABOUT DATE | INDIVIDUAL | MEANS OF IDENTIFICATION TRANSFERRED, POSSESSED, AND USED |
|---|---|---|---|
| **SIXTEEN** | September 17, 2012 | Person A | Name |
| **SEVENTEEN** | November 15, 2012 | Person B | Name |
| **EIGHTEEN** | October 15, 2012 | Person C | Name |
| **NINETEEN** | June 5, 2013; August 6, 2013 | Person D | Name |
| **TWENTY** | December 5, 2012 | Person E | Name |
| **TWENTY-ONE** | December 5, 2012 | Person F | Name |
| **TWENTY-TWO** | March 5, 2013; May 15, 2013; July 5, 2013; July 15, 2013 | Person G | Name |

23.     Defendants FAULKNER and JOHNSON transferred, possessed, and used the means of identification identified in paragraph 22 above in furtherance of a scheme to defraud.

**(Aggravated Identity Theft, Aiding and Abetting and Causing an Act to be Done, in violation of Title 18, United States Code, Sections 1028A and 2)**

**COUNTS TWENTY-THREE AND TWENTY-FOUR**
**(Engaging in Monetary Transactions in Property**
**Derived from Specified Unlawful Activity)**

24.     Paragraphs 1 through 11 and 14 through 16 of this Indictment are realleged and incorporated by reference as if set out in full.

25.     On or about each of the dates and in the amounts specified below, in the District of Columbia and elsewhere, Defendant FAULKNER, did knowingly engage and attempt to engage in the following monetary transactions, by and through, or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, that is, by causing the following amounts to be transferred from a bank account at Bank of America, held in the name of Company A, account no. xxxx8213, to a bank account at Bank of America, account no. xxxx3178, held in the name of Company A, or withdrawn as cash, such proceeds having derived from a specified unlawful activity, that is mail fraud and wire fraud.

| COUNT | ON OR ABOUT DATE | TOTAL AMOUNT TRANSFERRED OR WITHDRAWN | AMOUNT OF FRAUD PROCEEDS TRANSFERRED OR WITHDRAWN |
|---|---|---|---|
| **TWENTY-THREE** | February 19, 2013 | $12,757 | $10,660 |

16

| TWENTY-FOUR | July 5, 2013 | $18,000 | $14,835 |
|---|---|---|---|

**(Engaging in Monetary Transactions in Property Derived from
Specified Unlawful Activity, in violation of Title 18, United States Code, Section 1957)**

### COUNT TWENTY-FIVE
**(Acts Affecting a Personal Financial Interest)**

26.     Paragraphs 1 through 11 and 14 through 16 of this Indictment are realleged and incorporated by reference as if set out in full.

27.     From at least in or about July 2012 through in or about July 2014, in the District of Columbia, Defendant JOHNSON, being an officer and employee of the District of Columbia, knowingly and willfully participated personally and substantially as a Government officer and employee, through decision, approval, the rendering of advice, and otherwise, in a contract and claim, in which Defendant JOHNSON had a financial interest.

**(Acts Affecting a Personal Financial Interest,
in violation of Title 18, United States Code, Section 208)**

### COUNT TWENTY-SIX
**(First Degree Fraud)**

28.     Paragraphs 1 through 11 and 14 through 16 of this Indictment are realleged and incorporated by reference as if set out in full.

29.     From at least in or about July 2012 through in or about July 2014, in the District of Columbia, Defendants FAULKNER and JOHNSON, engaged in a scheme and systematic course of conduct with intent to defraud and to obtain property of another by means of a materially false and fraudulent pretense, representation, and promise, and thereby obtained property of another of a value of $1,000 or more and caused another to lose property of a value of $1,000 or more, that is, at least $217,366.25 of District of Columbia funds.

17

**(Fraud in the First Degree, in violation of
Title 22, District of Columbia Code, Sections 3221(a) and 3222(a))**

## FORFEITURE ALLEGATION

1.      Upon conviction of any of the offenses alleged in Count One through Count Fifteen, the defendants shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to this offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).  The United States will also seek a forfeiture money judgment against the defendants of at least $217,366.25.

2.      Upon conviction of any of the offenses alleged in Count Twenty-Three through Count Twenty-Four, the defendants shall forfeit to the United States any property, real or personal, involved in this offense, and any property traceable to such property, pursuant to 18, U.S.C. § 982(a)(1).  The United States will also seek a forfeiture money judgment against the defendants of at least $25,495.

3.      If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the Court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property that cannot be divided without difficulty;

the defendants shall forfeit to the United States any other property of the defendants, up to the

value of the property described above, pursuant to 21 U.S.C. § 853(p).

**(Criminal Forfeiture, pursuant to Title 18, United States Code, Section 981(a)(1)(C), Title 28, United Sates Code, Section 2461(c), Title 18, United States Code, Section 982(a)(1), and Title 21, United States Code, Section 853(p))**

A TRUE BILL:

FOREPERSON

ATTORNEY FOR THE UNITED STATES
IN AND FOR THE DISTRICT OF COLUMBIA